UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 77-416-CR-ROSENBERG/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FERNANDO GARCIA-GODOS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

The Defendant, a fugitive from justice who is now in Peru and subject to extradition proceedings there, has filed a Motion to Vacate Warrant for Extradition in which he asks this Court to intercede in those extradition proceedings. [*See* DE 4]. The government filed a Response to the Motion, the Defendant filed a Reply, and the Court referred the Motion to me. [DE 5, 11, 14]. I heard oral argument on February 1, 2018. Having carefully considered the argument of counsel, the legal memoranda and the applicable law, I recommend that the Court deny the Defendant's Motion.

**I.    Background**

On November 17, 1977, the government charged the Defendant by Indictment with multiple counts of possession with intent to distribute cocaine, importation of cocaine and conspiracy to commit those offenses. [DE 11-1]. The Defendant admitted his guilt to all offenses and, on June 27, 1978, this Court sentenced the Defendant to serve concurrent twelve years terms of imprisonment as to each count. [DE 11-2, 11-3]. The

1

Court remanded the Defendant to the Bureau of Prisons (BOP) to serve his sentence, but on July 31, 1980, he escaped from BOP custody. [DE 4 at ¶2; DE 11 at 2].

The Defendant remained at large for more than 30 years. In early 2016, the government filed with this Court a criminal complaint that charged the Defendant with criminal escape, in violation of 18 U.S. § 751. *See U.S. v. Fernando Garcia-Godos*, Case No. 16-mj-2227-McAliley ("*Garcia-Godos II*") at DE 3. The affidavit the government filed in support of that Complaint states that the United States Marshals Service had recently learned that Defendant was living in Peru. [*Garcia-Godos II* at DE 3, ¶15]. The Court signed the Complaint and issued an arrest warrant for the Defendant. [*Id.* at DE 4]. That arrest warrant has not been executed, and as will be explained, that warrant and the pending escape charge have no bearing on the government's pending extradition proceedings.

In October, 2016,[1] the United States asked the Government of Peru to provisionally arrest the Defendant, so that he might be extradited to the United States pursuant to the Extradition Treaty between the United States and Peru (the "Treaty"). [DE 11 at 2]. The United States thereafter formally requested that Peru extradite the Defendant. [*Id.*]. In an affidavit in support of the Defendant's extradition, government counsel stated that the United States seeks the Defendant's extradition "so that he may serve the remainder of his sentence imposed based on his guilty pleas to the six counts in the indictment." [DE 11-5 at ¶14]. The government explicitly stated that it is "not seeking

---

[1] The government's memorandum states it made its provisional arrest request in 2017, but this appears to be an error, as the record otherwise suggests this took place in 2016. [*see* DE 11, at 2; DE 11-5].

2

Garcia-Godos' extradition for the escape charge." [*Id.*].[2] Peru's extradition process is underway, but has not been concluded.[3] [DE 11, at 2-3].

In his Motion, the Defendant complains that the United States government's extradition request does not comply with the Treaty for a number of reasons, and thus would not support a decision by Peru to extradite him. [DE 4]. He also argues that the United States government is improperly attempting to extradite him to prosecute him for escape (which it plainly is not). [*Id.*]. Further, the Defendant claims the United States unfairly delayed its extradition request, and he asks this Court to authorize him to issue discovery requests to the government to explore that claim of delay (although he provides no authority that might justify this). Finally, the Defendant argues that it would be unfair for Peru to order his extradition because he has lived a productive and law-abiding life since his escape and he therefore does not merit further incarceration. [*Id.*].

Neither in his Motion nor Reply does the Defendant state what order he would have this Court issue (beyond one authorizing discovery). [*See* DE 4, 14]. When I asked defense counsel at the hearing to articulate the relief he seeks, he asked that this Court find that the United States government's extradition request does not comply with the Treaty and, on this basis, "strike" that extradition request. In effect, the Defendant would

---

[2] At the February 1, 2017 oral argument, government counsel confirmed that the government seeks the Defendant's extradition so that he can complete serving his sentence in this case; *not* to prosecute him for escape.

[3] At oral argument, counsel for both parties confirmed that the extradition process in Peru is not yet complete.

have this Court declare that the government's extradition request is unlawful and enjoin the executive branch persisting in that request.

For the following reasons, I conclude that this Court should not engage in a review of the merits of the United States' pending extradition request, and I recommend that it deny the Motion.

## II. Analysis

### A. Fugitive Disentitlement Doctrine

The fugitive disentitlement doctrine vests courts with discretion to refuse to consider a fugitive's application for relief. *United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1997) (citing *Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993)). Four rationales support the doctrine: (1) *enforceability*, that is, the difficulty of enforcing a decision against a defendant who is unwilling to subject himself to the court's authority, (2) *equity*, namely the unfairness of allowing a defendant to use the resources of the court whose authority he flouted, (3) *deterrence*, namely discouraging flights from justice and (4) *prejudice*, specifically, the need to avoid prejudice to the non-fugitive party (here, the government). *Barnette*, 129 F.3d at 1183 (citations omitted); *see also United States v. Mann*, Case No. S4 00 CR 632 (WHP), 2003 WL 1213288 at *1 (S.D.N.Y. March 17, 2003). Courts that apply the doctrine also have done so where there has been a connection between the defendant's fugitive status and the judicial process he seeks to utilize. *Barnette*, 129 F.3d at 1183, (citing *Ortega-Rodriguez*, 507 U.S. at 242-248).

The doctrine clearly applies here.[4] Starting with the notion of enforceability, if the Court were to review the merits of the pending extradition request as the Defendant asks, and if it found for the government on the merits, it could not enforce its order against the Defendant as he is in Peru and is unwilling to submit to this Court's jurisdiction. As for equity, it would be unfair to allow the Defendant to invoke this Court's resources when he flouted this Court's authority with his escape. Denial of the Defendant's Motion would serve as a warning against others who might be inclined to contemptuously leave this Court's jurisdiction and then challenge the Court's authority from afar; thus, this would further deterrence. Last, refusal to review the merits of the government's extradition request would avoid prejudice to the government that might come from this Court second-guessing the extradition process that is currently underway in Peru. Also, the expected nexus between the Defendant's fugitive status and this Court plainly exists, as the Defendant's "contemptuous disrespect manifested by his flight" was directed at this Court, which imposed his sentence; and it is to this Court that the Defendant now asks for relief. As the Supreme Court recognized, "the District Court [] has the authority to defend its own dignity, by sanctioning an act of defiance that occurred solely within its domain." *Ortega-Rodriguez*, 507 U.S. at 246 (citation omitted).

Notably, the District Court in the Southern District of New York considered a similar motion, filed by a Defendant charged in that District, but who was in Mexico refusing to come to this country. When that defendant asked the Court to vacate the

---

[4] At oral argument, defendant's counsel did not dispute this.

5

government's extradition request to Mexico, the Court relied on the fugitive disentitlement doctrine to deny the defendant's motion. *Mann, id.* 2003 WL 1213288 at *1. I find the reasoning expressed by that Court persuasive here.

In his Reply and at oral argument, defense counsel argued that the fugitive disentitlement doctrine does not apply because the Defendant is no longer a fugitive now that he is in Peruvian custody and his location is known to the United States. This has no merit. The Eleventh Circuit observed that a fugitive is "a person who, having committed a crime, flees from the jurisdiction of the court where a crime was committed. . . ." *Barnette*, 129 F. 3d at 1183 (citations omitted). The Defendant did just this and is a fugitive.

Other courts have reached the same obvious conclusion. *See e.g., Maydak v. United States Department of Education*, 150 Fed. Appx. 136, 138 (3d Cir. 2005) (affirming dismissal of defendant's lawsuit against the government because "[Defendant] was not returned to the District Court's custody until a month after his [lawsuit] was dismissed, and prior to his return, he contested extradition. Thus, he was indeed a fugitive."); *Mann*, 2003 WL 1213288 at *1 (defendant contesting extradition from Mexico was a fugitive "as a matter of law" because he had not returned to the United States since he was charged by indictment and an arrest warrant was issued).

For these reasons, I recommend that the Court rely upon the fugitive disentitlement doctrine to deny the Defendant's Motion to Vacate.

### B.     International Comity

Considerations of international comity provide an additional reason to deny the Motion. A decision of the Court of Appeals for the District of Columbia is instructive here. That Court found that principles of international comity meant that a district court lacked subject matter jurisdiction to review a defendant's challenge to the United States government's efforts to extradite him, when the extradition proceeding in the other country had not been concluded. *See Casey v. Department of State*, 980 F.2d 1472, 1478-79 (D.C. Cir. 1992). The *Casey* court offered several reasons for its conclusion.

First, citing the Supreme Court's decision in *Johnson v. Browne*, 205 U.S. 309 (1907), it found "that an American court must give great deference to the determination of the foreign court in an extradition proceeding." *Casey*, 980 F.2d 1477. Importantly, this means that the foreign court must complete its extradition proceedings, before an American court might review a final decision. *Id.* at 1478.

The Government of Peru has not announced a final decision whether to extradite the Defendant. This Court cannot give appropriate deference to a decision of the Peruvian government that has not yet been made. Indeed, the Government of Peru may decline to extradite the Defendant, making these proceedings unnecessary.

The *Casey* court also recognized that if a United States court were to consider the merits of a defendant's extradition while that question is pending before another country, competing decisions could inject confusion in the extradition process. *Id.* at 1478. This concern is certainly present here.

7

Finally, the *Casey* Court noted the importance of the district court's deference to the State Department's responsibility to seek extradition. Interference with this executive branch function could "raise separation of powers concerns." *Id.* at 1478.

For all these reasons, I recommend that this Court decline, on grounds of international comity, to consider the merits of the Defendant's Motion.

### III. Recommendation

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the Court **DENY** the Defendant's Motion to Vacate Warrant for Extradition. [DE 4].

### IV. Objections

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Robin L. Rosenberg, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), 28 U.S.C. § 636(b)(1); Fed.R.Crim.P. 59(b), 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** this 15th day of March, 2018, at Miami, Florida.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Robin L. Rosenberg
    Counsel of record